Filed 12/11/20  In re M.R. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re M.R., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B305665 (Super. Ct. No. J071938) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. S.H., Defendant and Appellant. | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on November 17, 2020, be modified as follows:

1.  On page 11, at the beginning of the second full paragraph, the following sentences and citation are deleted:

Here the juvenile court found the child "does not have a bond with her mother."  This finding shows the court rejected the credibility of Mother's testimony about bonding.  (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 52.)

    The following is inserted in its place:

The court found the child has a bond with Mother, but the bond was outweighed by a series of other currently relevant factors.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

GILBERT, P.J.          YEGAN, J.          PERREN, J.

2

Filed 11/17/20  In re M.R. CA2/6  (unmodified opinion)
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re M.R., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B305665 (Super. Ct. No. J071938) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. S.H., Defendant and Appellant. | |

S.H. (Mother) appeals orders of the juvenile court terminating her parental rights to her child M.R. and denying her petition under Welfare and Institutions Code[1] section 388 seeking reinstatement of family reunification services.

_____

[1] All statutory references are to the Welfare and Institutions Code.

(§ 366.26.)  We conclude Mother has not shown an abuse of discretion.  We affirm.

FACTS

On November 6, 2018, the Ventura County Human Services Agency (HSA) filed a juvenile dependency petition (§ 300, subds. (b)(1) & (g)), alleging that Mother had been arrested for possession of a controlled substance and child abuse.  HSA said Mother "has substance abuse issues" involving heroin and methamphetamine which interferes with her ability to provide adequate care for her 20-month-old child.  Mother admitted using heroin daily and methamphetamines weekly.  In her home, police found a bag "full of needles."  There was a "filled needle" located on the child's "changing table."  The child was taken into protective custody.

On November 7, 2018, the juvenile court ruled that it was contrary to the child's best interests to remain in Mother's home, and that the child comes within section 300.  Mother would receive visitation with the child, as approved by HSA.

In a jurisdiction/disposition report, HSA recommended that the child be declared a dependent of the juvenile court and that Mother receive family reunification services.  HSA noted that Mother "is presently incarcerated."  It said, "The Agency is worried the mother will use drugs and be unable to safely supervise the child . . . ."

The juvenile court found it had jurisdiction, and on December 31, 2018, it sustained the juvenile dependency petition.  The court initially ruled that the child should be removed from Mother's custody.  But it subsequently approved the child being placed with Mother "on a 60-day extended visit at Prototypes Women's Center."

2

In January 2019, HSA ended that visit because Mother had relapsed and used drugs "twice in a two-week period." Mother was discharged from Prototypes.

In February, Mother entered the Lighthouse Recovery Program. She left that program early after only 12 days.

Between January and May 2019, Mother was required to have 13 drug tests. She missed four tests. In nine random drug tests, Mother tested positive for methadone. She also tested positive for "alcohol, opiates, and methamphetamines" in four of the nine tests.

On September 9, 2019, the child's counsel filed a petition (JV-180) to terminate Mother's reunification services based on the following facts: 1) Mother tested positive for morphine in August 2019 and was asked to leave a "sober living" treatment center; 2) since June 2019, Mother had seven opportunities to take random drug tests; she only took five tests and tested positive for methadone and morphine; 3) Mother "failed to regularly participate in her case plan"; 4) Mother entered a sober living facility on March 29, 2019, and was forced to leave because of a positive test for morphine; 5) Mother missed an in-home therapy session in August 2019; and 6) in August 2019, "[d]rug paraphernalia was found [] in a bathroom cabinet in a bathroom the minor child had access to unsupervised."

HSA filed a report stating that Mother tested positive for opiates on September 23, 2019. HSA also reported that Mother "admitted to using drugs" in September 2019 "while at Criminal Court." A social worker reported that the child is now in "a loving and caring" foster home. HSA recommended that reunification services be terminated. It said, "[M]other has *not been able to maintain her sobriety for any length of time; she has*

3

*continued to be dishonest and unable to take responsibility for her actions*." (Italics added.)

In October 2019, the juvenile court terminated Mother's reunification services and set a section 366.26 hearing.

Mother filed a section 388 petition seeking to reinstate reunification services. That petition was considered at the section 366.26 hearing.

At that February 2020 hearing, the HSA social worker testified Mother tested positive for methamphetamine and opiates on September 13, 2019. She tested positive for opiates on September 23, 2019. She used methamphetamine on September 24 while she was on "medically-assisted treatment." Mother admitted using drugs "while in criminal court." Mother missed drug tests. The child told the social worker that she wanted to go home. By home, she was referring to "the foster parents' home."

Mother testified that she is "able to remain on medically-assisted treatment" now. She has been sober since September 25, 2019. She visits the child once a week for one hour. The child calls her "mommy." Mother said that when the child was at Prototypes, "[they] sing, [they] play with toys, [they] play hide-and-seek, [they] go outside, and [they] go on walks." She said, "And sometimes [the child] just wants me to hold her." The child is "excited to see [her]." Mother also testified that she used drugs in July 2019 while at a sober living house. She also "relapsed" in August 2019. That occurred at a sober living facility.

One of the foster parents told the juvenile court that it was a "joy to care for [the child] over the last 13 months." The child "is secure and thriving from the consistency, safety, love and predictability of [their] home."

4

At the section 366.26 hearing, the juvenile court denied the section 388 petition and terminated Mother's parental rights to the child.

## DISCUSSION

### *The Section 388 Petition*

Mother contends the juvenile court abused its discretion in denying her section 388 petition to reinstate reunification services.

"Section 388 allows a person having an interest in a dependent child of the court to petition the court for a hearing to change, modify, or set aside any previous order on the grounds of change of circumstance or new evidence." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) To make a "prima facie showing," the "parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children." (*Ibid.*)

"We review the trial court's findings for substantial evidence." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) "We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*Ibid.*) We draw all reasonable inferences in support of the trial court's findings. (*In re Nicole B.* (1979) 93 Cal.App.3d 874, 879.)

"After the termination of reunification services, a parent's interest in the care, custody and companionship of the child is no longer paramount." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.) "Rather, at this point, the focus shifts to the needs of the child for permanency and stability." (*Ibid.*) "When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role." (*Ibid.*)

"That need often will dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child." (*Ibid*.)

On December 24, 2019, Mother filed a request to change court order (§ 388) to reinstate reunification services. She claimed that she entered the Prototypes program and was "completely sober from opiates" since September 2019. She said she had attended supervised visits with the child for one hour per week.

The trial court ruled, "Mother has not shown a change of circumstances such that offering her 6 more months of reunification services would be in [the child's] best interest." She has not demonstrated that she could provide the child with "a safe, sober, stable home." Mother "has not been successful in remaining sober for any extended period of time."

Mother notes that in HSA's brief it concedes that she "was laudably trying to conquer her drug addiction." But HSA also noted that Mother's "circumstances were merely changing and a long way off from having actually changed." A "change in circumstances must be substantial." (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) Recent completion of drug and rehabilitation programs is laudable, but that, by itself, may not be sufficient for one who has had a long-term drug addiction and a long history of multiple relapses. (*Ibid.*) This is particularly the case where the change is alleged to have occurred after the termination of reunification services. The court must also consider the child's best interests, bonding with a foster family, and the child's current need for a stable home. (*Id.* at pp. 223-224.) " 'Childhood does not wait for the parent to become adequate.' " (*Id.* at p. 224.)

The record supports the juvenile court's findings. Mother had not successfully completed the requirements for family reunification. She had a longstanding drug addiction problem. She had entered various treatment programs over the years. But she continually relapsed and returned to drugs. She was sober for only a relatively short period of time before she filed the section 388 petition. That was not long enough to show she had overcome her drug addiction. Mother made an effort to reform, but these were only "recent efforts at rehabilitation" after substantial noncompliance with a reunification plan. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9.) This drug addiction problem presented a danger for the child. The child's prospective adoptive parents had provided the child with a safe and stable home. This was something the trial court could find Mother had not been able to accomplish.

Mother claims she should be entitled to additional reunification services because of her social worker's "service errors" and the worker's "discouragement of" a medication-assisted treatment (MAT) program. HSA responds that the social worker acknowledged that she told Mother on March 14, 2020, that "visits would not liberalize until [Mother] was 'weaning off' methadone." But the social worker did not say Mother had to be " 'off methadone' altogether." HSA notes it did not prevent visitation with the child. It argues this claim is an example of Mother "subtly shifting blame for her relapses to others instead of herself."

Mother suggests that the social worker had no authority to question the impact or effectiveness of her (Mother's) MAT because of its well-established benefit to heroin users.

Medically assisted methadone treatment may well be beneficial for certain drug addictions. But public social services agencies have a right to be concerned when a parent on methadone treatment is also testing positive for other drugs. (*Karen H. v. Superior Court* (2001) 91 Cal.App.4th 501, 504-505.) That is a sign that the treatment is not working and that the parent cannot "maintain a sober life." (*Id.* at p. 505.)

Given the facts of this case, the social worker could be concerned about the impact and effectiveness of Mother's drug-administered treatments because Mother: 1) had a long drug abuse history, 2) had placed the child in danger because of drug abuse, 3) appeared to be under the influence during visits, 4) had repeatedly tested positive for various drugs, 5) had not been honest with the social worker, 6) did not comply with reunification services, and 7) was demanding greater visitation with a very young child.

Mother argues the juvenile court did not appreciate the benefits of her current MAT program in treating drug abuse and the court decided to bypass the issue. But that is not the case. The court found "while on MAT since September 2019 and while living in a controlled environment, the mother can remain sober." But it also found Mother has not shown that "she can remain sober while living in a less structured setting in the community, around the various triggers that resulted in her choosing to resume drug use." The court also rejected the credibility of Mother's claim that she had resolved her drug problem with her current medical treatment given her history. It found, "[M]other has participated in substance abuse treatment several times before and since [the child] was born. She has used MAT many times to help her avoid relapsing; but she has not been successful

8

in remaining sober for any extended period of time." Mother has not shown the court abused its discretion by not reinstating reunification services.

*Terminating Parental Rights*

Mother contends the juvenile court's order terminating parental rights should be reversed because she and the child shared a beneficial relationship. (§ 366.26, subd. (c)(1)(B)(i).)

Section 366.26, subdivision (c)(1) provides, in relevant part, "If the court determines, based on the assessment provided as ordered under subdivision (i) of Section 366.21 . . . , and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption." But there is an exception where the court "finds a compelling reason for determining that termination would be detrimental to the child due to . . . the following circumstances: (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (*Id.*, subd. (c)(1)(B)(i).)

This exception requires the parent to meet a high "hurdle." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 51.) The legislative intent is that "adoption should be ordered unless exceptional circumstances exist." (*Ibid.*) The "well-being of the child" is a critical issue for the court to decide where a parent claims this exception. (*Id.* at p. 50.)

Here the juvenile court recognized that Mother had visited the child. But it also found the child "has not lived consistently with [Mother] since November 2018 when she was 20 months old." The child was removed at that time because of Mother's "substance abuse" problems. Mother "had been arrested or

9

charged with drug-related offenses eight different times since 2015." She had a long history of obtaining drug treatment and then relapsing and testing positive. The court said Mother presented evidence that since September 2019 she "has been sober" while living at the Prototypes treatment center. But she "has not yet been able to demonstrate that she can remain sober while living in a less structured setting in the community."

Mother claims the juvenile court should have credited her testimony that she had been sober since September 25, 2019, and is able to remain sober on "medically-assisted treatment." But the trial court decided her credibility. (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 52.) Moreover, Mother admitted that she took drugs in July and "relapsed" in August 2019. Her August relapse date is close in time to her claimed September 25th "sober" date. Mother was also asked, "And you were initially not honest with your social worker about your relapse, were you?" Mother: "No." Mother claimed she was satisfied with her current circumstance at the Prototypes center. But she testified that she had been to that program on two prior occasions. The court could draw a reasonable inference that simply being at that program was not an assurance that her drug problem was resolved.

Moreover, the juvenile court could also reasonably find Mother's actions did not show a substantial commitment for the child's well-being; instead, they placed the child at risk. Mother could not complete her initial case plan. She had a longstanding drug addiction. A social worker noted that on several supervised visits with the child prior to September 2019, Mother "appeared under the influence of drugs," could not "maintain eye contact," and "arrived late to these visits." She noted that Mother "was using drugs during a visit" with a relative. Mother had left drug

needles near the child.  She admitted using drugs "while at Criminal Court."  In one HSA report, the agency noted that Mother had been "dishonest" and "unable to take responsibility for her actions."  The court said that Mother "made a choice to use drugs many times since [the child] was removed, and even when [the child] was returned to her care."  The child "has suffered because of the mother's choices."

Mother argues:  1) her social worker's report showed the child had a strong attachment to her foster parents, but the social worker's testimony about it "seemed lackluster," and 2) Mother's testimony showed "the child's relationship with [Mother] seemed stronger than the relationship she had with her foster parents." But the court could find the social worker's reports and testimony were not inconsistent and Mother's testimony was self-serving. The trial court exclusively decides the credibility of the witnesses.

Here the juvenile court found the child "does not have a bond with her mother."  This finding shows the court rejected the credibility of Mother's testimony about bonding.  (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 52.)  The court said, "There is no evidence that [the child] currently suffers from not seeing her mother between visits."  "The visits are pleasant and the mother is appropriate."  "[B]ut after living with her caregivers for over a year, [the child] *sees them as her family . . . .*"  (Italics added.) "All of [the child's] needs are being met by her resource parents and family.  The benefits [the child] will gain from adoption, including a permanent and stable home, outweigh the possible detriment resulting from a termination of parental rights."

The HSA evidence supports these findings.  HSA reports show the child now has "a strong attachment to her prospective adoptive parents and their adoptive children."  The child is

"adoptable," "well adjusted," and "thriving in a loving home." She refers to the children of her prospective adoptive parents as her "sissies," meaning her sisters. The "prospective adoptive parents express their love and commitment for [the child]." The court could reasonably find the child's current interest in safety and stability was furthered by her living with her prospective adoptive family, rather than with Mother at a drug rehabilitation program while Mother attempts to overcome her addiction.

Mother notes that the child was receiving therapy, but the child's therapist did not make a "placement" recommendation. She claims this was "highly irregular" and does not support the juvenile court's findings. But the therapist did not make such recommendation because she felt "it is ultimately not my part to decide or influence where [the child] is placed permanently . . . ."

Moreover, the therapist's assessment supported the juvenile court's findings. She said that the child "is bonding very well" with the foster family, and "is making great strides in her ability to ask for her needs, communicate her likes/dislikes, and co-regulate emotionally with caregivers." This current home "has provided [the child] with the utmost care for her well-being, and emotional and physical safety." "[W]ith [the child's] current placement, she has really come out of her shell and is achieving her therapeutic goals."

We have reviewed Mother's remaining contentions and we conclude she has not shown grounds for reversal.

12

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

Tari L. Cody, Judge

Superior Court County of Ventura

_____

Maryann M. Goode, under appointment by the Court of Appeal, for Defendant and Appellant.

Leroy Smith, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.